**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MALCOLM STALLWORTH,

                         Petitioner,

        - v -                                           Civil No. 9:04-CV-1168
                                                                    (RFT)

THOMAS M. POOLE, *Superintendent*,

                         Respondent.

**APPEARANCES:**                                       **OF COUNSEL:**

MALCOLM STALLWORTH
Petitioner, *Pro Se*
02-B-1002
Wyoming Correctional Facility
P.O. Box 501
Attica, N.Y. 14011-0501

HON. ANDREW M. CUOMO                         ALYSON J. GILL, ESQ.
Attorney General for the State of New York        Assistant Attorney General
Attorney for Respondent
120 Broadway                                             LUKE MARTLAND, ESQ.
New York, N.Y. 10271                             Assistant Attorney General

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER[1]

*Pro se* Petitioner Malcolm Stallworth was convicted of criminal possession of a controlled substance in the third and fifth degrees by a jury in New York State Supreme Court, Onondaga County. State Ct. R. on Appeal (hereinafter "R."), Trial Tr., dated Apr. 8-11, 2002 (hereinafter "Trial Tr."), at 595-96. On May 3, 2002, he was sentenced to indeterminate concurrent terms of imprisonment of eight and one-third (8 ⅓) to twenty-five (25) years for the third degree conviction, and two and one-third (2

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule 72.2, the parties consented to this Court presiding over all matters. Dkt. No. 16.

⅓) to seven (7) years for the fifth degree conviction. R., Sentencing Tr., dated May 3, 2002, at 9 (hereinafter "Sentencing Tr."). Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 alleging that (1) the evidence at trial was insufficient and the verdict was against the weight of the evidence; (2) ineffective assistance of counsel; and (3) an unduly harsh and excessive sentence was imposed. Dkt. No. 1, Pet at ¶¶ 12-13. For the reasons that follow, the Petition is **DENIED**.

## I. BACKGROUND

The following facts were adduced at trial. On August 8, 2001, John Pilger purchased a couple hundred dollar's worth of cocaine from Brittany West. Trial Tr. at 310-12. Later that night, Pilger picked up West and another woman and drove them to the Knights Inn, where they used the drugs. *Id.* The next morning, West told Pilger to rent another room because her dealer, Dooley, was coming. *Id.* at 314. Pilger went to the ATM machine for cash, rented a second room, and gave the room-key to West. *Id.* at 314-15. At some point thereafter, Pilger, West, and another woman whom West had picked up earlier that day, got into an argument in the Inn's parking lot. As a result of the commotion, the Inn manager approached Pilger and asked him to leave. *Id.* at pp. 320-21. When the manager accompanied Pilger back to the room, he saw drug paraphernalia and called the police. *Id.* at 321.

Deputy Alissa Verzino responded to the call. *Id.* at 289. Sometime prior to this, Petitioner had arrived at the hotel and was standing outside the second room Pilger had rented. *Id.* at 279. Verzino spoke to West and Petitioner, who both stated that Petitioner had just then arrived in order to give West a ride. *Id.* at 295-96. Verzino concluded they had not done anything illegal and allowed the two to leave. *Id.* at 290-91.

Pilger was arrested, taken to the sheriff's department station, and put in a holding cell. *Id.* at

324-25. While there, his cell phone rang, displaying a caller identification (ID) number of 395-5119. *Id.* at 360. Detective Daniel Brogan answered the phone, but the caller, who identified herself as Brittany West, thought she was talking to Pilger. *Id.* at 360-61. Posing as Pilger, Brogan told West that he needed more drugs. *Id.* at 361. Brogan also heard a male voice in the background, creating a three-way conversation. *Id.* at 362. West asked Brogan if he had money and they arranged for Brogan to call back. *Id.* at 363. When Brogan called back on Pilger's phone, he connected to the voicemail recording, which said: "This is Dooley, leave a message." *Id.* at 368. Brogan did not leave a message but called back a second time shortly thereafter. *Id.* at 368. A male voice, identifying himself as "Dooley" answered. *Id.* at 368-69. In their conversation, Brogan insinuated to Dooley that he desperately needed drugs and had the money to pay for them. *Id.* at 369. Brogan did not mention the drugs by name for fear that it would make Dooley suspicious. *Id.* at 399. Dooley passed the phone to West to set up a meeting place and they eventually settled on the Pilot truck stop. *Id.* at 371-72.

Brogan directed his surveillance team to the Pilot truck stop. *Id.* at 407. Detective Edward K. Brisson observed Petitioner drive into the parking lot at the truck stop, with West in the passenger seat, and park. *Id.* at 408 & 410. Brisson approached the vehicle as other members of the team activated their emergency lights and moved their cars so as to foreclose any possible escape. *Id.* at 409-10. He then asked Petitioner if he knew why he was there, to which Petitioner responded that he did not, but also stated that there were no drugs in the car that he was aware of. *Id.* at 410. Detective Brogan arrived at the scene after Petitioner and West had been taken into custody. *Id.* at 375. He searched Petitioner's car and found a cell phone whose number matched the number he had called earlier to set up the sting. *Id.* at 377.

Thereafter, West admitted she had drugs on her person, and during a strip search at the police

station, removed drugs which had been secreted in her vagina. *Id.* at 446-47. Brisson tested the recovered substance and confirmed it to be cocaine. *Id.* at 413. Laboratory testing confirmed that 1,410 milligrams of cocaine was recovered. *Id.* at 463. Later, when filling out the arrest reports, Petitioner informed Brisson that his nickname was Dooley. *Id.* at 421.

At the end of his jury trial, Petitioner was convicted of criminal possession of a controlled substance in the third and fifth degrees. *Id.* at 595-96. He filed a New York Criminal Procedure § 330.30(1) motion to set aside the verdict on the grounds that misrepresentations were made during the pre-trial *Sandoval*[2] hearing with respect to two prior convictions that the trial judge deemed admissible on cross examination. R., § 330 Mot. Tr., dated May 3, 2002, at 2 (hereinafter "Mot. Tr."). At the motion hearing, Petitioner showed that the felony convictions the judge found would be admissible on cross-examination had in fact been disposed of as misdemeanors. In addition, Petitioner's attorney stated that although Petitioner had repeatedly informed him of the inaccuracy, he did not believe Petitioner and therefore only objected to the prior convictions on grounds of relevance, not mistake. *Id.* at 6-7. Petitioner argued that counsel had been ineffective in ignoring his repeated assertions of error concerning the prior convictions and in overriding his desire to testify as a result. *Id.* at 18. The court rejected his arguments and denied the motion. *Id.* at 19-20.

Thereafter, Petitioner was sentenced to indeterminate concurrent terms of imprisonment of eight and one-third (8 ⅓) to twenty-five (25) years on the third degree charge, and two and one-third (2 ⅓) to seven (7) years on the fifth degree charge. Sentencing Tr. at 9. The New York State Supreme Court, Appellate Division, Fourth Department, affirmed the conviction and the New York State Court of

---

[2] *See People v. Sandoval*, 314 N.E. 2d 413 (N.Y. 1974). A *Sandoval* hearing is "an evidentiary hearing held to determine whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility." *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000) (citing *Sandoval*).

Appeals denied leave to appeal. *People v. Stallworth*, 767 N.Y.S.2d 357 (N.Y. App. Div., 4th Dep't 2003), *lv. denied*, 808 N.E.2d 369, (N.Y. Ct. App. 2004). Petitioner filed the instant *Habeas* Petition on October 8, 2004.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST., amend. VI. To establish a violation of this right to the effective assistance of counsel, a *habeas* petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, measured by the prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[3]

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court has held that federal district courts need not address both components if a petitioner fails to establish either one. *Strickland v. Washington*, 466 U.S. at 697. In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*.

In this case, Petitioner argues that he was denied a fair trial because his attorney did not correct

---

[3] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'" 529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

an erroneous Department of Criminal Justice Service (DCJS) report concerning two previous convictions during the pre-trial *Sandoval* hearing, and because his attorney did not subpoena Brittany West to testify. We consider these claims *in seriatim*.

1. *DCJS Report Error*

At the *Sandoval* hearing, the prosecution sought permission to cross-examine Petitioner using four previous felonies: one in 1986, another in 1990, and two in 1997. R., *Sandoval* Hr'g Tr., dated Apr. 4, 2002, at 21-22 (hereinafter "*Sandoval* Tr."). The court ruled that the 1986 and 1990 felonies were too far removed to be used at trial, but the two felonies in 1997 were not. *Id.* at 22-23.

During his § 330 motion, Petitioner was able to show that the DCJS report was inaccurate because the 1997 felonies were actually disposed of as misdemeanors. Mot. Tr. at 6. Petitioner had repeatedly informed his attorney of the errors but was ignored because his attorney "believed [his] client to be confused." *Id.* at 13-14. Petitioner argued that he did not testify at trial because he believed that the jury would be prejudiced against him should the two felonies be revealed. *Id.* at 14.

Although the trial court recognized during Petitioner's § 330 motion hearing that the DCJS report was inaccurate, it rejected the argument of ineffective assistance of counsel, stating that only meaningful representation, not error-free representation, was required. *Id.* at 20 & 26-30. On direct appeal, Petitioner raised the same issue but the Appellate Division found that he had received meaningful representation, and that the erroneous rap sheet did "not undercut that conclusion." *People v. Stallworth*, 767 N.Y.S.2d at 358.

The trial court's and the Appellate Division's rulings were not contrary to and did not involve an unreasonable application of *Strickland* and its progeny. First, representation by Petitioner's attorney did not fall below an objective standard of reasonableness. He conducted an experienced *voir dire* and

the opening statement, cross examinations, and closing statement displayed an excellent strategy to inject reasonable doubt into the case. Trial Tr. at 2-228, 261-66, 281-88, 293-307, 328-54, 381-404, 422-43, 463-68, 477-82, & 493-519. The performance was effective enough that the jury sent out numerous notes and deliberated over two days before reaching its verdict. Mot. Tr. at 28. Petitioner's counsel's failure to correct or investigate the DCJS report does not render the whole of an otherwise competent representation ineffective.

Second, in light of the overwhelming evidence adduced against him, failure to correct the DCJS report did not prejudice Petitioner. The testimony adduced at trial was that after West told Pilger that her dealer Dooley was coming to the hotel, Petitioner was seen standing outside the second room Pilger had rented at the Knights Inn. Trial Tr. at 279. Petitioner admitted to the police that his nickname is Dooley, the same name and voicemail that answered Detective Brogan's call to set up the sting. *Id.* at 368-69 & 421. Furthermore, after the phone call, Petitioner was observed with West pulling into the parking lot of the truck stop to make the drug sale. *Id.* at 409. The cellphone subsequently found in Petitioner's car displayed the same number that Brogan had called. *Id.* at 377.

Given such overwhelming evidence, it is unlikely that Petitioner's version of the events would have carried much weight, if any, had he testified at trial. Even if he denied involvement with the phone call, that would not erase the fact that he drove West to the meeting place. And, had Petitioner claimed ignorance of the drugs hidden in West's body, that testimony would be highly suspicious in light of the fact that when Petitioner was stopped by Detective Brogan, he stated, without provocation, that if there were any drugs on West, he was not aware of it. *Id.* at 410. Considering such evidence, there is no reasonable probability that the trial outcome would have been any different had Petitioner's counsel identified the error in the DCJS report and Petitioner testified on his own behalf.

Because Petitioner received meaningful representation and was not prejudiced by his counsel's failure to correct the DCJS report, this claim must be **DENIED**.

2. *Failure to Subpoena*

Petitioner's second argument for ineffective counsel centers on his attorney's failure to subpoena Brittany West. This argument was not raised in his § 330 motion nor on direct appeal and is therefore unexhausted, creating a "mixed" Petition. Prior to the enactment of the AEDPA, federal courts were required to dismiss mixed petitions, requiring total exhaustion. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). However, under the AEDPA, courts have discretion to deny an unexhausted claim on the merits, rather than require exhaustion. 28 U.S.C. § 2254(b)(2); *see also Marziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000) (Sharpe, M.J.).

While the Second Circuit has not yet articulated the appropriate standard to be utilized in determining whether an unexhausted claim should be denied on the merits, those district courts that have addressed the question appear to utilize two somewhat distinct standards. Some courts have reviewed unexhausted claims to determine if they were "patently frivolous." *See*, *e.g.*, *Acosta v. Couture*, 2003 WL 272052, at *7 (S.D.N.Y. Jan. 23, 2003); *Pacheco v. Artuz*, 193 F. Supp. 2d 756, 761 (S.D.N.Y. 2002); *Hammock v. Walker*, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002); *Cruz v. Artuz*, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002). Other courts have chosen instead to analyze the claim to determine if it is "perfectly clear that the petitioner does not raise even a colorable federal claim." *Rosario v. Bennett*, 2002 WL 31852827, at *17 (S.D.N.Y. Dec. 20, 2002) (noting the diverging views on this issue without deciding which standard is appropriate); *see also Lambert v. Blackwell*, 134 F.3d 506, 514-15 (3d Cir. 1997). This Court need not decide which of these tests should be utilized in considering this aspect of the Petition because under either standard, Stallworth's claim for relief is

meritless.

Petitioner asserts that his attorney was ineffective for not subpoenaing West, "the only person caught with the drugs." Pet. at ¶ 13. However, the decision not to call a witness during trial has been recognized as strategic, *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998), and "complaints against counsel concern[ing] matters of trial strategy . . . do not form the basis for a finding of ineffective assistance," *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir. 1983); *see also Strickland v. Washington*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Accordingly, Petitioner's mere complaints about his counsel's trial strategy do not raise a colorable federal claim. Furthermore, Petitioner fails to give any reason why the defense would have any incentive to call West to testify, nor can the Court ascertain any. Even assuming West would be willing to waive her Fifth Amendment right against self-incrimination and testify, in all likelihood, her testimony would have seriously damaged Petitioner by further supporting his incriminating role in the sale. For these reasons, the Petition is **DENIED** on this ground as well.

### C. Weight of the Evidence

Petitioner's claim that the verdict was against the weight of the evidence is not entitled to federal *habeas* review. Weight of the evidence review is a product of New York state statute and therefore merely a state law issue. *See* N.Y. CRIM. PROC. LAW § 470.15(5); *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004); *see also People v. Bleakley*, 508 N.E.2d 672, 671-72 (N.Y. 1987) (explaining the different analyses on appeal when reviewing "weight of the evidence" and "insufficient evidence" challenges). It is well-established that *habeas corpus* review is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). As such, no cognizable federal

issue is presented by a *habeas* claim challenging the weight of the evidence adduced at trial. *Cardena v. Giambruno*, 2004 WL 239722, at *4; *Glisson v. Mantello*, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Thus, Petitioner is not entitled to federal *habeas* relief based upon his challenge to the weight of the evidence offered against him at trial. *See Camacho v. McKinney*, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004); *Brown v. Fischer*, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) ("It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.") (citations omitted).

### D.  Insufficient Evidence

A *habeas* petitioner claiming that there was insufficient evidence supporting his conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson v. Virginia*, 443 U.S. at 319.[4]

When considering a challenge based upon the sufficiency of evidence, a federal *habeas* court

---

[4] The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 276 n.5 (E.D.N.Y. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000)) (other citation omitted); *see also Santana v. Kuhlmann*, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

must look to state law to determine the elements of a crime. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). In New York State, a person is guilty of criminal possession of a controlled substance in the third degree when he "knowingly and unlawfully possesses a narcotic drug with intent to sell it." N.Y. PENAL LAW § 220.16(1). A person is guilty of criminal possession of a controlled substance in the fifth degree when he "knowingly and unlawfully possesses cocaine and said cocaine weighs five hundred milligrams or more." *Id.* at § 220.06(5). A person who does not actually possess illegal drugs can nonetheless be held criminally liable if he "solicits, requests, commands, importunes, or intentionally aids" another in committing the offense. *Id.* at § 20.

Viewed in the light most favorable to the prosecution, the evidence establishes that Petitioner was West's dealer and that he intended to sell the cocaine. At the Knights Inn, West told Pilger to rent a second room because her dealer, Dooley, was coming. Trial Tr. at 314. Shortly thereafter, Petitioner was seen at the hotel standing outside the second room. *Id.* at 279. Later, Detective Brogan received a call from West on Pilger's cellphone, and when he called back to set up a sale, he reached a voicemail recording with the recorded greeting: "This is Dooley, leave a message." *Id.* at 360 & 368. When Brogan called a second time a man who identified himself as Dooley answered. *Id.* at 368-69. Dooley then passed the phone to West, but in the background, he negotiated with Brogan that the meeting place for the sale would be the Pilot truck stop. *Id.* at 371-72. Petitioner then drove with West to the truck stop where they were arrested. West later revealed that she was carrying over five hundred milligrams of cocaine in her body which she turned over to the authorities. *Id.* at 409. In addition, Petitioner admitted to the police that his nickname was Dooley. *Id.* at 421.

It is clear from these facts that Petitioner, as West's dealer, was in charge. Though he did not possess the drugs himself, he constructively possessed them by "command[ing]" the sale and

"intentionally aid[ing]" West in carrying the drugs to the truck stop. Therefore, a rational trier of fact could have found Petitioner criminally liable for West's actions and guilty of criminal possession of a controlled substance in the third and fifth degrees. For all these reasons, relief on this ground is **DENIED.**

### E. Excessive Sentence

Lastly, Petitioner claims that his sentence is unduly harsh and excessive. It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *Mayerhofer v. Bennett*, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007). Here, Petitioner was convicted of criminal possession of a controlled substance in the third degree, a Class B felony, and criminal possession of a controlled substance in the fifth degree, a Class D felony. N.Y. PENAL LAW §§ 220.16(1) & 220.06(5). The minimum sentence for a Class B felony is one (1) to eight and one-third (8 ⅓) years imprisonment and the maximum is twenty five (25) years. *Id.* § 70.00(2)(b) & (3)(b). The minimum sentence for a Class D felony is one (1) to two and one-third (2 ⅓) years imprisonment and the maximum is seven (7) years. *Id.* § 70.00(3)(b) & (2)(d). Petitioner's sentences of concurrent terms of eight and one-third (8.3) to twenty-five (25) years, and two and one-third (2.3) to seven (7) years, respectively, were therefore within the range set by New York State law.

Finally, to the extent that Petitioner's claim could arguably be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state

statute is not cruel and unusual punishment in the constitutional sense. *See White v. Keane*, 969 F.2d at 1383; *Lou v. Mantello*, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001). The Supreme Court has held that, for offenses less than manslaughter, sentences longer than 25 years are not grossly disproportionate. *See Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft) (cited in *Staubitz v. Lord*, 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006)) & *Harmelin v. Michigan*, 501 U.S. at 995 (life in prison without the possibility of parole for cocaine possession). Petitioner's sentence was not contrary to nor an unreasonable application of that precedent. Since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the Petition is **DENIED**.

### III. CONCLUSION

**ORDERED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**ORDERED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**

Date:   June 23, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge